LOUISVILLE, NEW ORLEANS & TEXAS RAILROAD CO. *v.* J. B. & M. P. HOPSON.

1. RAILROADS. *Right of way. Damages of landowner. Measure of same.*

Where, under a charter authorizing a railway company to acquire lands by condemnation and otherwise, and providing for an ascertainment of the value thereof by commissioners appointed by the chancery court, either on its application or that of the landowner, and that the "commissioners shall appraise in their assessment of damages such premises at what would have been the value thereof had not the road been built," etc., the company has built its road through certain lands and held and used the portion taken for seven or eight years, without procuring the right of way, it is not error, on the application of the landowner, to estimate the value of the lands as a whole, at the date of his proceeding, diminished

by their market value as a plantation, as decreased by the taking of the right of way and the intersection of the place by the road, without deduction on account of any supposed benefit arising from its construction.

2. SAME.

Where, under a charter contemplating that landowners shall be compensated at the time their property is taken for railway purposes, a railway company has entered upon and held and used lands for seven or eight years without procuring a right of way, by condemnation or otherwise, it is not entitled, on the owner's proceeding for an appraisement of his damages, under the charter, to have them estimated as of the time of the original taking, and the value of the place estimated as if the road had no existence.

FROM the chancery court of Coahoma county.

HON. A. H. LONGINO, Chancellor.

This is an appeal from the verdict of a jury assessing damages, on a proceeding inaugurated by the appellees for the condemnation of the right of way through their own plantation, under the charter of the New Orleans, Baton Rouge, Vicksburg & Memphis Short Line Railroad Co.     Acts 1882, § 2, p. 920.

The case was previously in the supreme court, on the appeal of the present appellees.     71 Miss., 503.     It was reversed on grounds not affecting the questions involved in the present appeal, and remanded for further proceedings.     The original petition was filed by the appellees in March, 1891.     The commissioners, under the statute, had found $5,000 damages in May, 1891, and the railway company had appealed to the next regular term of the chancery court thereafter, and demanded a jury, as provided by the statute, which resulted in the verdict from which the former appeal was taken.     When the cause was remanded for further proceedings, as before stated, another trial was had in the chancery court on May 21, 1895, and this trial resulted in a verdict against the railroad company for $1,091.33, from which this appeal is prosecuted.     The opinion contains so much of the charter as relates to the question before the court.

*Mayes & Harris*, for the appellant.

1. The statute fixes the basis upon which the verdict shall be returned, and, in express terms, provides that the jury shall exclude from their consideration any increase in valuation incident to the building of the railroad, and that, in estimating the damages, they shall consider the land as if the railroad were nonexistent.

The court below, on the other hand, instructed the jury that they should fix a value, to be ascertained by computing the value of the lands as a whole on May 11, 1891, which was eight years after the construction of the road, diminished by the market value of the place, as decreased by the taking of that part of it which was taken and by its intersection by the road; and, having given the jury this basis of calculation to start with, concluded the instruction by expressly informing them that no deduction from such sum should be made for any supposed benefit to plaintiff's farm, arising from the construction of said railroad.

It seems clear that, in telling the jury they were not to exclude that benefit or increment of value from their computation, the statute is directly violated. It was clearly the intention of the legislature, in passing this charter in aid of the railroad through the Mississippi delta (a perilous and uncertain venture), to allow them to have their rights of way, which it was supposed would result in developing an uninviting and inaccessible country, without being called on to bear the additional burden of paying for the increased valuation which the construction of the road would bring about.

It is especially important to consider, in connection with these propositions, the fact that the charter itself gives, not only to the railroad company the right to inaugurate these condemnation proceedings, but also to the landowner himself. It was clearly intended that the landowner, being placed in a situation where he could, at any time he might see proper, have a jury impaneled, to assess his damages, and that, not being to any

extent dependent in that respect upon the pleasure of the company, he would not be allowed to delay the matter for years, and then reap from his own delay the benefit of a measure of damages higher and greater than that which would have existed had he moved promptly. We do not advert to these considerations as substantive ground of the claim of error, but only as aiding and enforcing the statute itself, which expressly declares that the measure of damages shall be on the basis as if the road had not been built.

2. This statute is not obnoxious to § 10, art. 1, const. 1869, for while the constitutional requirement prevents the landowner from being compensated by such resultant benefits as may accrue to his land not taken, does not, on the other hand, entitle him to receive as compensation for his land that is taken, the increment of value which is or will be occasioned by the building of the road. That is a very different proposition. The measure of damages fixed by the charter is not unusual. It is exactly that which obtains in several of the states. *Railroad Co.* v. *Elliott*, 5 Nev., 358; *Railroad Co.* v. *Tyree*, 7 W. Va., 693; *Railroad Co.* v. *Turner*, 9 Leigh, 313.

However that may be, the appellees having elected to proceed under the charter, must be treated as waiving any constitutional quarrel they might have had with its provisions. They cannot avail themselves of the benefit of the charter, and, at the same time, repudiate the standard established by it as a measure of damages.

WOODS, J., delivered the opinion of the court.

The second section of "An act to incorporate the New Orleans, Baton Rouge, Vicksburg & Memphis Short Line Railroad Co.," of which company the appellant is the successor, (Acts of 1882, p. 921), is too lengthy to be conveniently set out in full in this opinion, but, in substance, it authorizes the railroad company to acquire, in any of the methods therein mentioned, any land necessary and proper for the construction and

working of the road, not exceeding fifty feet in width on each side of the line of the railroad, and also lands necessary and proper for turnouts, side tracks, station houses, etc.   The section then employs this language: "And in case the owners of such lands or premises cannot agree with said company as to the value of the premises taken, or to be taken, for the use of said road, the value thereof shall be determined by the appraisal of three disinterested commissioners, who may be appointed upon the application of either party to the chancery court of the county in which the land or premises to be taken lie, and said commissioners shall appraise, in their assessment of damages, such premises at what would have been the value thereof had not the road been built," etc.

The present litigation has arisen in this way:   About the year 1884 the railroad company, without acquiring any title to a right of way across and through the plantation of appellees, by condemnation proceedings or otherwise, entered upon the lands in question, constructed its line of railway, and has been using and holding the same ever since.   In the year 1891, seven or eight years after their lands had been thus invaded and seized, appellees instituted their proceeding for condemnation, under the provisions of the charter already referred to and quoted from.   In that proceeding in the chancery court the view of the railroad company's counsel was that, in computing appellees' damages for the condemnation of the right of way, any consideration of increase in value incident to the building of the railroad should be excluded from the mind of the jury, and that the jury should consider the land as if the railroad were not in existence at all.   On the contrary, counsel for the appellees contended (as we infer from the record, as we are unaided by any brief for appellees in this court) that the damages to be awarded the landowners should be ascertained by estimating the value of the lands as a whole, at the date of the institution of the condemnation proceeding, diminished by the market value of the plantation as decreased by the taking

of the right of way and by the intersection of the place by the railroad, and, further, that no deduction from the sum thus ascertained should be made for any supposed benefit to the plantation arising from the construction of the railroad. This latter contention was adopted by the court below in its instructions to the jury, and a verdict for about $1,100 followed, with judgment for that sum, from which the railroad appeals.

The controversy has arisen out of the long delay in the institution of condemnation proceedings by either party, and the only real question involved is this: Were damages to be computed as of the date of the original entry upon and seizure of appellees' land by the appellant, when the road had not been built, and when the value of the plantation was to be estimated in the absence or nonexistence of the railroad, or were the damages to be computed as of the date of the institution of the condemnation proceeding, and the value of the plantation estimated, not as if the road were not in existence at all, but as if the road were not built on these particular lands?

It is clear to our mind that the charter contemplated expropriation proceedings and due compensation made to the private owners before their property should be taken by the railroad for its uses and purposes. We gather this from the charter generally, and this construction meets § 10, art. 1, constitution of 1869. But, for reasons satisfactory to itself, the railroad company chose not to acquire title to a right of way by condemnation before entering upon and appropriating the appellees' lands. On the contrary, it elected to take the chances of litigation with the owners for a naked trespass, and of the results of future condemnation proceedings. It only desired to acquire title to a right of way in appellees' land (if, indeed, it may be said to have ever voluntarily had such desire), after it had occupied and used such right of way for seven or eight years.

In May, 1891, by proper condemnation proceedings, it was first sought to have the railroad acquire title to that which it

had long used, but never owned. Then, at that date, the litigation arose by which the hitherto undisturbed title of appellees was sought to be divested out of them and invested in the railroad. What was the owner of the property then entitled to? What was the measure of his recovery? The value of his property at that time, with the railroad lifted off his land, but not nonexistent generally, or the value of the land eight years earlier, when no railroad had been built? To deprive the appellees, wholly or partially, of compensation for the taking of their land, considering its value and appellees' damage from the taking at the time title was to be divested out of the owner, would violate the spirit of the very charter under which the railroad exists, and would contravene the constitutional provision to which we have referred.

The owner of private property taken for public use can only have due compensation when he is made whole for his loss and damage at the time his property is taken. A simple illustration will make clear the correctness of this view: Suppose the appellees had sold and conveyed their plantation to a stranger in the year 1890 for its full value, at that time, and in 1891 the railroad company had concluded, at length, that its interests would be promoted by the acquisition of title to the right of way over and through the plantation of this stranger, would due compensation be made him, in condemnation proceedings begun by the railway company, by regarding the lands as they were seven years before, when no railroad had been built, and when the present owner was a stranger to the title and the lands? Rather, would not justice demand that if his land was to be taken, and damage to be inflicted upon him, computation should be made of the value of the property at that time, the time of his injury, and not at any period long antedating his damage?

We think it unnecessary to go into the other assignments of error, for the reason that, independently of the supposed errors in the court's action in ruling upon the evidence as to Bermuda

grass, and as to the value of a part of the land taken as building sites, there is much evidence to support the not extravagant sum awarded by the jury.

*Affirmed.*